UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE THE ESTATE OF WILLIAM BERNARD, SR.,
Personal Representative of Estate, William Bernard, Jr.,
and TEAMSTERS LOCAL UNION 164,

    Plaintiffs,

v.

Case No. 15-11107

Hon. John Corbett O'Meara

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, GENERAL PRESIDENT
JAMES P. HOFFA, JR., GREG NOWAK,
and KEVIN MOORE, as co-trustees of Local
Union 164,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the court is Defendants' motion to dismiss, which has been fully briefed. For the reasons explained below, Defendants' motion is granted in part and denied in part.

**BACKGROUND FACTS**

This case arises under the Labor-Management Reporting and Disclosure Act ("LMRDA"), which "was the product of congressional concern with widespread abuses of power by union leadership." Finnegan v. Leu, 456 U.S. 431, 435 (1982).

The act addresses disclosure requirements, elections, trusteeships, and union members' free speech, assembly, and equal voting rights.

Plaintiff William Bernard, Sr., was the principal officer of Teamsters Local 164. Bernard was removed from office in 2013 as a result of a trusteeship imposed upon Local 164 by the International Brotherhood of Teamsters ("IBT"). According to the IBT, the trusteeship was imposed as a result of financial mismanagement. Bernard contends that the trusteeship was imposed in retaliation for his association with attorneys who represented the opponent of IBT General President James Hoffa in the 2011 IBT general election. Bernard claims that his free speech and due process rights under Title I of the LMRDA were violated and that the trusteeship was improperly imposed in violation of Title III of the LMRDA.

Bernard was the principal officer (Secretary-Treasurer) of Local 164 from 1973 to 2013. Bernard contends that, from 1989 to 1998, he accrued unpaid vacation pay and cost of living allowances in the amount of $163,000 through his union employment. In 2005, as Local 164 began to have financial difficulties, Bernard agreed to forego his $81,000 salary and continue as Secretary-Treasurer in exchange for reimbursement of his accrued benefits. He received monthly payments between $100 and $1,000 between November 2007 and 2013.

In 2011, Hoffa ran for re-election as IBT General President; Sandy Polk and Fred Gegare ran against him. Hoffa was re-elected to a five-year term in November 2011. Gerry Miller and Scott Soldon are Wisconsin labor lawyers who represented many Teamster Locals in the Midwest, including Local 164. Soldon was also Fred Gegare's attorney in his 2011 campaign for IBT General President.

On June 22, 2012, Local 164 President Allen Sprague wrote a letter to Michigan Teamsters Joint Council 43 requesting that attorneys Miller and Soldon be invited to attend a Fall 2012 delegates meeting as guests. Dave Robinson, President of Joint Council 43, denied Sprague's request. Robinson also expressed displeasure, stating "you made a very unprofessional decision by requesting the attorney that spent a year with Fred Gregare trying to remove General President James P. Hoffa from office, attend our annual Fall Delegates Meeting. Michigan Teamster Joint Council #43 is the home of General President James P. Hoffa and I am disappointed and astonished that you would even make such a request." Defs.' Ex. 2.

On August 27, 2012, Hoffa appointed Greg Nowak as his personal representative to investigate Local 164 because of concerns over financial mismanagement and its continued viability. On January 30, 2013, Hoffa gave notice that Local 164 was being placed in emergency trusteeship. The notice stated

that "I take this action in view of the fact that most of the following improprieties involve financial transactions, the current officers have complete discretion and control over the Local's remaining assets, and some of the officers' professed belief that they are entitled to additional compensation that would more than exhaust the available resources should they remain in office and choose to pay themselves." Defs.' Ex. 4.  Hoffa appointed Nowak and Kevin Moore as co-trustees.

On March 12, 2013, Hoffa issued a notice of hearing regarding whether the temporary emergency trusteeship imposed over Local 164 should be continued or dissolved.  The hearing was scheduled for April 30, 2013.  Following the hearing, the panel issued a report and recommendation that the trusteeship be continued.  The panel concluded that Local 164 was not a financially viable organization and that it must merge with another local union or dissolve.

Hoffa ratified the panel's recommendation on June 10, 2013.  At this time, the officers of Local 164, including Bernard, were expelled from office.  On March 31, 2014, Local 164 was dissolved.  Its members and assets were divided among Locals 1038, 299 (Nowak and Moore's locals), and 580.  Trustees Nowak and Moore refused to pay the $150,000 debt Bernard alleges that he was owed.

Bernard passed away in September 2013.  His estate and Local 164 filed this

action on March 25, 2015, alleging the following causes of action: Count I, violation of due process under Title I of the LMRDA; Count II, violation of free speech and assembly rights under Title I; and Count III, violation of Title III with respect to imposition of the trusteeship. Defendants seek dismissal of all of Plaintiffs' claims.

## LAW AND ANALYSIS

### I.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. See also Hensley Manuf. v. Propride, Inc., 579 F.3d 603, 609 (6th Cir. 2009).

### II.   Due Process under Title I of the LMRDA

Plaintiffs allege that Bernard's removal as an officer of Local 164 violated his due process rights under LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5). Section 101(a)(5) provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). Defendants argue that these procedural safeguards protect the membership rights of union members, not union officers from removal from office.

As the Supreme Court has noted, the legislative history supports Defendants' view. The conference report explains that Section 101(a)(5)'s "prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; *it does not refer to suspension of a member's status as an officer of the union.*" Finnegan v. Leu, 456 U.S. 431, 438 (1982) (emphasis in original and citation omitted). See also Sullivan v. Laborer's Int'l Union of N.A., 707 F.2d 347, 350 (8th Cir. 1983) (holding that the "safeguards contained in section 411(a)(5) are clearly inapplicable to Sullivan's suspension [as a union officer]"); Long v. UAW Local 674, 545 F. Supp.2d 702, 707-709 (S.D. Ohio 2008); Messina v. Local 1199, SEIU, 205 F. Supp.2d 111, 125-26 (S.D.N.Y. 2002); Austin v. UAW, 2004 WL 2112730 (E.D. Mich. June 4, 2004).

Plaintiffs argue that Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347

(1989) supports Bernard's Title I due process claim.  In <u>Lynn</u>, a union business agent was removed from office by a trustee in retaliation for his failure to support a dues increase.  The Court held that Lynn stated a claim under Title I for violation of his free speech rights.  The Court further stated that "a trustee's authority under Title III ordinarily should be construed in a manner consistent with the protections provided in Title I." <u>Lynn</u>, 488 U.S. at 357.

<u>Lynn</u> concerned rights under § 101(a)(2) and does not address the issue here – whether section 101(a)(5)'s due process protections apply to the removal of union officers from their positions.  As Plaintiffs point out, <u>Lynn</u> holds that union members' rights under Title I do not "fall by the wayside whenever a trusteeship is imposed." <u>Id.</u> at 356.  This holding does not illuminate the question of whether a union officer has a due process right with respect to removal from office under Title I in the first place, under a trusteeship or otherwise.  The weight of authority answers this question in the negative.  <u>See</u>, <u>e.g.</u>, <u>Messina</u>, 205 F. Supp.2d at 120-22, 124-26 (elected union delegate who was removed in retaliation for criticizing union leadership stated a claim under free speech provision of §101(a)(2) but not due process provision of §101(a)(5)).

The court finds that Bernard has not stated a claim under §101(a)(5) and that Count I of the complaint must be dismissed.

## III.    Free Speech Claim under Title I of the LMRDA

In Count II of the complaint, Plaintiffs allege that Defendants violated § 101(a)(2) of the LMRDA by retaliating against Bernard for associating with lawyers who represented Gregare, who opposed Hoffa in the 2011 IBT general election.  Section 101(a)(2) protects union members' rights to free speech and assembly.  Id. ("Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions. . . .").  Generally, the removal of an elected union officer from office in retaliation for expressing his views states a claim under § 101(a)(2).  See Lynn, 488 U.S. at 357; Messina, 205 F. Supp.2d at 121-22.

In this case, a complicating factor is that Bernard was removed from office as a result of the *imposition* of a trusteeship.  Defendants argue that Bernard's claim under §101(a)(2) of Title I is really a challenge to the validity of the trusteeship and must be brought under Title III.[1]  See Farrell v. International Bhd. of Teamsters, 888 F.2d 459 (6th Cir. 1989).  Indeed, Bernard alleges that the

---

[1] At the same time Defendants argue that Bernard has no cause of action under Title I, and that his claims must be brought under Title III, they also argue that Bernard may not recover individual damages under Title III.  If both of Defendants' arguments were accepted, Bernard would be without a remedy for the alleged violation of free speech rights as a result of the imposition of an allegedly invalid trusteeship. Cf. Pope v. OPEIU, 74 F.3d 1492, 1504-1505 (6th Cir. 1996).

imposition of the trusteeship was itself retaliatory. It does not follow, however, that Bernard cannot state a claim as a matter of law under Title I for free speech rights that were infringed as a result of the imposition of an invalid trusteeship. Rather, Bernard's Title I claim – based upon the imposition of the trusteeship – is only foreclosed if the trusteeship is determined to be *lawful* under Title III or if its validity is not challenged. See Keenan v. International Ass'n of Machinists and Aerospace Workers, 632 F. Supp.2d 63, 72 (D. Me. 2009) ("Because Plaintiffs' removal from office resulted from imposition of the Local S6 trusteeship – a trusteeship that was procedurally and substantively lawful under Title III – this injury cannot ground a proper Title I claim."); Morris v. Hoffa, 2001 WL 1231741 (E.D. Pa. Oct. 12, 2001) (finding no claim under Title I *after* determining on summary judgment that the trusteeship was valid under Title III).

In other words, Bernard may not state a claim under Title I (under these facts) without also attacking the validity of the trusteeship under Title III. See Farrell, 888 F.2d at 462. In Farrell, the plaintiffs sued under Title I to vindicate local election rights, but did not challenge the validity under Title III of the trusteeship that allegedly violated those rights. The Sixth Circuit held that Title III provided the appropriate remedy:

> A determination of the validity *vel non* of the trusteeship
> must precede any determination of the appellants' right

-9-

> to hold local elections. If the trusteeship in the present case is a fraud, the statute provides a mechanism for the appellants to prove it *and thereafter recover their Title I rights*. But, let them not put the cart before the horse.

Farrell, 888 F.2d at 462 (emphasis added). See also Argentine v. United Steel Workers Ass'n, 23 F. Supp.2d 808, 814 (S.D. Ohio 1998) ("The three claims under Title I . . . are dependent upon a finding that the imposition of the trusteeship by the International was unlawful."); Pope v. OPEIU, 74 F.3d 1492, 1504-1505 (6th Cir. 1996) ("[T]his is an action at law to recover damages for the suppression of Title I rights as a result of the imposition of a trusteeship.").

Defendants seek dismissal of Plaintiffs' Title I claim as a matter of law under Rule 12(b)(6) before the court has had the opportunity to determine the validity of the trusteeship under Title III. As discussed below, a determination of the validity of the trusteeship at this stage of the proceedings is premature.

Defendants also contend that Plaintiffs' claim of retaliation is not plausible. Under the notice pleading standards of Rule 12(b)(6), however, Plaintiffs have sufficiently alleged facts suggesting that the trusteeship was imposed in retaliation for Bernard's association with legal counsel who represented Hoffa's opponent. Whether the evidence ultimately supports Plaintiffs' claim is a matter for summary judgment or trial. Accordingly, the court will deny Defendants' motion as to Count II.

**IV.** **Challenge to Trusteeship under Title III**

Defendants argue that Plaintiffs' Title III claim should be dismissed because (1) individual relief is not permitted under Title III; (2) Plaintiffs have failed to state a claim; and (3) the claim is barred by the statute of limitations.

In Ross v. Hotel Employees and Restaurant Employees Int'l Union, 266 F.3d 236 (3d Cir. 2001), the Third Circuit determined that an individual was not entitled to relief under Title III. In Ross the plaintiff was an appointed union official who was terminated after the imposition of a trusteeship. The plaintiff brought his action only under Title III, not Title I. The court found that Ross was attempting to vindicate Title I rights, not Title III rights, and held that "Title III does not allow a private cause of action for individual damages flowing from the termination of an appointed employee. Relief under §304 must be sought on behalf of the local union organization and the entire membership must reap the benefits." Ross, 266 F.3d at 257.

This case is distinguishable from Ross in that Plaintiffs are not solely seeking relief under Title III. Rather, Plaintiffs' Title III claim bears on whether Plaintiffs may recover under Title I. See Pope, 74 F.3d at 1505 ("The question of the propriety of the trusteeship is not moot because it has direct bearing on whether Pope's Title I rights were violated."). Although Plaintiffs are not entitled to

individual damages for a violation of Title III, Plaintiffs' Title III claim nonetheless survives because Plaintiffs' challenge to the trusteeship bears upon the alleged violation of Bernard's Title I rights. In other words, whether or not Plaintiffs are entitled to individual relief under Title III, the validity of the trusteeship must be adjudicated.

Defendants argue that Plaintiffs have not stated a claim for relief under Title III. Plaintiffs have alleged that the trusteeship was imposed for a retaliatory purpose. "[F]or a union local to challenge successfully the imposition of a trusteeship, it must either demonstrate that the trusteeship was not imposed in conformity with procedural requirements, or, it must produce 'clear and convincing' proof that the trusteeship was not established in good faith for a purpose allowed by statute." Teamsters Local Union No. 406 v. Crane, 848 F.2d 709, 712 (6th Cir. 1988).

Plaintiffs' allegations are sufficient under Rule 12(b)(6). Whether Plaintiffs have sufficient proof that the trusteeship was imposed for an improper purpose is appropriately determined after a more complete development of the record.

Defendants also allege that Plaintiffs' Title III claim is untimely and that this court should follow Maher v. IBEW, 1993 WL 57553 (N.D. Ill. Mar. 4, 1993), which adopted a six-month statute of limitations. Other than this unpublished case

from the Northern District of Illinois, in which the plaintiff did not contest the statute of limitations, Defendants provide no authority for the proposition that the statute of limitations for Title III claims is six months. Plaintiffs argue that it would be more appropriate to borrow the three-year statute of limitations from an analogous state claim (breach of fiduciary duty). See Reed v. United Transp. Union, 488 U.S. 319, 326 (1989) (for Title I claims, statute of limitations is borrowed from state personal injury statute). Defendants do not seriously contest this argument. The court finds that Plaintiffs claims are not barred by the statute of limitations.

V. **Local Union 164 as a Party**

Defendants contend that Local Union 164 must be dismissed as a party because it no longer exists and because Bernard's estate is not authorized to represent the local. See Teamsters Local Union No. 2000 v. Hoffa, 284 F. Supp.2d 684, 699 (E.D. Mich. 2003). Bernard has provided no authority for the proposition that he may act on the union's behalf in the absence of the membership's or executive board's approval. As Plaintiffs note, the bylaws of Local 164 permit the executive board to initiate legal action; Plaintiffs do not allege that such approval has been or can be granted. Accordingly, the court will dismiss Local 164 as a party.

## VI. The All Writs Injunction Issued by the Southern District of New York

Finally, Defendants argue that this action must be dismissed because it should have been brought in the Southern District of New York. In 1989, the U.S. government and the IBT agreed to a consent order entered in that district. The consent decree settled a civil RICO action brought by the government and was entered into "with the objectives of ridding IBT of any criminal element or organized crime and corruption and establishing a culture of democracy to maintain the Union for the sole benefit of its members." Defs.' Ex. 12 at 1. In 1990, the court issued an order pursuant to the All Writs Act compelling all lawsuits that seek to litigate issues arising under the consent decree to be filed in the Southern District of New York. United States v. International Bhd. of Teamsters, 728 F. Supp. 1032 (S.D.N.Y. 1990), aff'd 907 F.2d 277 (2d Cir. 1990). Specifically, the all writs injunction provides:

> Pursuant to 28 U.S.C. §1651, the IBT and its constituent entities, and all members, officers, representatives, agents and employees of the IBT or any such IBT constituent entity, are permanently enjoined from filing or taking any legal action that implicates the Consent Decree or this Final Order in any court or forum in any jurisdiction other than this Court. Upon discovering that an action that implicates the Consent Decree or this Final Order has been filed in any forum other than this Court, the IBT shall promptly give notice to the United States Attorney for the Southern District of New York.

Defs.' Ex. 12 at ¶ 7. The government and the IBT recently entered into a final settlement agreement with respect to the consent decree, which was approved by Chief Judge Loretta Preska on February 17, 2015.

The consent decree enjoined IBT members from engaging in racketeering activity, associating with members of organized crime families (including La Cosa Nostra) or any other criminal group, and from interfering with the work of court appointed officers or the Independent Review Board. The final order provides for all permanent injunctions to survive the dismissal of the action.

It is not clear to the court that this action implicates the consent decree issued by the Southern District of New York. This case does not involve allegations of corruption, racketeering, the influence of organized crime, or actions by the Independent Review Board, an entity created by the consent decree to investigate such matters. Nor are Plaintiffs challenging IBT election results or conduct during an election.

In the case relied upon by Defendants, Powers v. IBT, 945 F. Supp. 437 (S.D. Conn. 1996), the U.S. Attorney for the Southern District of New York weighed in on the issue of the consent decree and urged the court to transfer the case to the Southern District of New York. In this case, the court has received no such suggestion. Pursuant to the All Writs injunction, IBT should have notified the

U.S. Attorney for the Southern District of New York if it believes this action implicates the consent decree.  Further, if this case implicates the consent decree, the appropriate remedy may be transfer rather than dismissal.

Chief Judge Preska is perhaps in the best position to determine whether this action implicates the consent decree and must be heard in the Southern District of New York.  Should Defendants seek relief in the Southern District of New York, the court will entertain a request for a stay.  At this time, Defendants motion to dismiss the action on this basis is denied.

## **ORDER**

IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

s/John Corbett O'Meara<br>United States District Judge

Date:  September 23, 2015


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 23, 2015, using the ECF system.

s/William Barkholz<br>Case Manager